UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


VIRGINIA LYNN KITCHEN,

                Plaintiff,

       v.                                Case No. C-1-07-105

BD. OF EDUC., FAIRFIELD CITY
SCHOOL DIST.,

                Defendant.


**<u>ORDER</u>**

       This matter is before the Court upon defendant's motion for summary judgment (doc. 17), plaintiff's opposing memorandum (doc. 38), and defendant's reply (doc. 41).  The parties have filed proposed findings of fact and conclusions of law, which the opposing side has highlighted as true, false, or irrelevant (docs. 40, 42).

**I.  Introduction**

       Plaintiff Virginia Lynn Kitchen brings this action against the Board of Education, Fairfield City School District, alleging gender discrimination under Title VII of the Civil Rights Act of 1964 and Ohio Rev. Code §§ 4112.02 and 4112.99, and age discrimination under the Age Discrimination in Employment Act (ADEA) and Ohio Rev. Code Ch. 4112.  Plaintiff alleges in the complaint that she is a 51-year old female; she worked for defendant from July 2002 until her termination effective September 26, 2005; she held the position of Assistant Superintendent, for which she was fully qualified; on September 16, 2005, she attended a Fairfield High School

football game; she was stopped at approximately 2:00 a.m. the following morning and arrested for operating a motor vehicle while under the influence of alcohol (OVI); on September 26, 2005, defendant recommended that her contract be terminated because of the incident; plaintiff requested a private hearing regarding the recommended termination, and a referee concluded that plaintiff should immediately be reinstated to her position; on December 28, 2005, defendant rejected the referee's recommendation and terminated plaintiff; and other male and/or substantially younger certified personnel in the district charged with, or convicted of, driving under the influence (DUI) have not been investigated, suspended, or fired.[1]

## II. Request for Oral Argument

Plaintiff has requested oral argument on her motion. The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Ohio, the Court therefore finds that oral argument is not necessary and plaintiff's request for same is denied.

## III. Findings of Fact

1.  Plaintiff was born in 1955.

2.  Defendant hired plaintiff as Assistant Superintendent in August 2002.

3.  Robert Farrell, Fairfield's Superintendent, knew of plaintiff's good reputation and reviews at her previous school district and saw plaintiff as a prime candidate for an Assistant Superintendent position.

---

[1] The parties appear to use the terms "DUI" and "OVI" interchangeably.

4.      After securing the Assistant Superintendent position, plaintiff was second-in-command to Farrell.  She reported solely to Farrell and, in his absence, served as the chief administrative officer of the School District.

5.      Plaintiff's myriad of responsibilities included recruiting and hiring about 60 certified staff serving on numerous committees and performing all other tasks or duties as assigned by the Superintendent.

6.      The Fairfield City Board of Education at the time of plaintiff's termination included Michael Oler, Eugene Ball, Anne Crone, Terry Senger and Nancy Wenning.

7.      According to Fairfield City School policy, employees are subject to termination for "having in possession or using intoxicants and/or non-prescription drugs or being under the influence of same on Board property."

8.      Plaintiff's termination stemmed from events which began on September 16, 2005, a date on which plaintiff attended a Fairfield High School home football game.

9.      Plaintiff consumed alcohol before the football game and then left the game after halftime and joined friends for additional drinks.  While driving home, at approximately 2:00 a.m., she was stopped by an Ohio state trooper and arrested for allegedly driving under the influence of alcohol.

10.     The following Monday, September 19, 2005, plaintiff was participating in a team meeting with several other administrators when Farrell excused himself to take a phone call.  In that phone call, Farrell learned of Plaintiff's arrest from John Clemmons, the Board Attorney, and Farrell confronted her about it.  Plaintiff admitted that she had been arrested but claimed that she had consumed only two glasses of wine that evening and

was almost home when she was stopped.

11.    Farrell told plaintiff nothing about her job being in jeopardy but told her that he was going to report to the Board and get back to her.  The next day, Farrell put plaintiff on administrative leave.

12.    Employees later reported to Farrell upon questioning that plaintiff had exhibited atypical and animated behavior at the game and had a moderate odor of alcoholic beverage on her breath.

13.    After learning of plaintiff's atypical behavior at the football game and DUI charge, Farrell recommended an investigation to the Board.

14.    The Board voted unanimously to consider termination in a resolution dated September 26, 2005.  The resolution was intended to express the rationale behind the consideration of termination.  It stated that the recommendation was based on alleged immorality and other good and just cause arising from plaintiff's course of conduct over the evening of September 16, 2005, and the early morning hours of September 17, 2005, which ultimately resulted in her being arrested and charged with OVI, obstruction of official business, and other charges.

15.    All but one of the charges against plaintiff was dropped, and the remaining charge was reduced to a lower-level OVI charge.

16.    The resolution cited plaintiff's behavior at the football game and the circumstances surrounding the traffic stop as reasons for the consideration of plaintiff's termination.

17.    A hearing was held before a referee on November 30, 2005.  Following the hearing, the referee issued a report with findings of fact, conclusions of law, and recommendations.

In the findings of fact, the referee determined that based on the observations of plaintiff at the game and her lack of a reasonable explanation for her unusual behavior, plaintiff was mildly under the influence of alcohol at the high school football game.

18.    The referee concluded that plaintiff's conduct amounted to a single isolated incident and did not constitute sufficient grounds for termination.  The referee therefore recommended that plaintiff be reinstated.

19.    The referee further found that plaintiff had not informed Farrell of her arrest despite the fact that they had a history of staying in touch about school issues seven days a week, if necessary.  Instead, plaintiff returned to work on Monday, September 19, 2005, but she still did not inform Farrell about her arrest.  Plaintiff claimed that she did not inform Farrell of it because she had a meeting with an attorney the next day and had been advised to say nothing about her arrest until after that meeting.

20.    The Board voted to reject the referee's recommendation and terminated plaintiff's contract effective September 26, 2005, in a final resolution dated December 28, 2005.  The resolution allegedly included all of the reasons supporting plaintiff's termination.

21.    Farrell and the Treasurer issued plaintiff a notice of the termination.  According to the notice, plaintiff was terminated for her alleged conduct at the football game and the traffic stop with the attendant charges, as well as an alleged failure to report this matter when she returned to work and the misleading and deceptive comments plaintiff allegedly made when confronted with the allegations.

22.    Plaintiff initiated an administrative appeal of the decision in the Butler County Court of Common Pleas.  The Common Pleas Court took additional evidence at a hearing held on

June 2, 2006.  The court affirmed the decision of the Board and denied plaintiff

reinstatement by an entry filed September 7, 2006.

23.     On appeal, the appellate court affirmed the decision of the Common Pleas Court by order

dated June 11, 2007,  finding the Board's decision was consistent with the weight of the

evidence.

24.     Nick Hrnyak was Fairfield City Schools' Athletic Director from 1999 to 2003.  The

Athletic Director position is a highly visible position in the district.  The Athletic

Director supervises all the district's coaches and student athletes.

25.     In Hrnyak's third year, while Farrell was still Superintendent, Hrnyak was charged with

DUI on a Saturday night after attending a Fairfield game.  He reported the charge to both

his supervisor, Monica Mitter, and to Farrell the next morning before they were notified

in some other manner.  There was no blood alcohol test reading in his case.

26.     The Assistant Superintendent at the time of Hrnyak's arrest was not aware of a DUI

charge against Hrnyak.

27.     Farrell never asked Hrnyak or the police for a copy of Hrnyak's ticket.  He did not bring

a recommendation of termination to the Board.  Mitter never did an investigation into

Hrnyak's arrest.  The Board did not issue any discipline to Hrnyak because of his DUI.


28.     Laura Siebenburgen, born in 1966, was a teacher at Fairfield Middle School while

plaintiff was Assistant Superintendent.  In September 2005, Siebenburgen was stopped at

a checkpoint on her way home and was charged with DUI.  Farrell did not recommend

that she be disciplined or terminated.  There was never any resolution to discipline or

terminate Siebenburgen. Instead, she was given information about the District's

Employee Assistance Program.

29. James Corwin was a Fairfield City School teacher at the middle school level. He was

also charged with a DUI. Farrell testified at his deposition that an investigation of

Corwin would have occurred through his administrator, Liz Griffel.

30. Brian Jones was a custodian for Fairfield who was charged with a DUI.

## IV. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination

of an action. This Court may only grant summary judgment as a matter of law when the moving

party has identified, as its basis for the motion, an absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest

upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)

(quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of

the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.

*Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

However, a district court need not view the facts in the light most favorable to the nonmoving

party if that party's version of events is "blatantly contradicted by the record, so that no

reasonable jury could believe it." *Scott v. Harris*, 127 S. Ct. 1769 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to

decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no

genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury

to return a verdict for that party. *Id*. at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the

evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not

significantly probative, *Cities Serv*., 391 U.S. at 290, judgment may be granted. *Anderson*, 477

U.S. at 249.

**V.  Opinion**

**A.  Age and Gender Discrimination Claims**

Under the law of this Circuit, the same evidentiary framework applies to discrimination

claims brought under Title VII, the ADEA, and state law. *Mitchell v. Toledo Hospital,* 964 F.2d

577, 582 (6th Cir. 1992). A plaintiff claiming discrimination must introduce either direct or

circumstantial evidence that the defendant discharged the plaintiff because of her membership in

a protected class. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007) (citing *Smith v.*

*Chrysler Corp*., 155 F.3d 799, 805 (6th Cir. 1999)). Plaintiff may establish a prima facie case of

discrimination through circumstantial evidence by showing that: 1) she is a member of a

protected class; 2) she suffered an adverse employment action; 3) she was qualified for the

position lost; and 4) she was replaced by an individual outside the protected class, or in the case

of age discrimination, by a substantially younger individual, which may include an individual

within the protected class. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992);

*O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313 (1996). Plaintiff may also

establish the fourth prong of a prima facie case by showing that she was treated less favorably

than a similarly-situated employee outside of her protected class. *Clayton v. Meijer, Inc.,* 281

F.3d 605, 610 (6th Cir. 2002).

If the plaintiff seeks to establish that she was treated less favorably than a similarly-situated employee outside of the protected class, she must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. ***Ercegovich v. Goodyear Tire & Rubber Co.,*** 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. ***Id.*** (quoting ***Mitchell,*** 964 F.2d at 583); ***Smith v. Leggett Wire Co.,*** 220 F.3d 752, 762 (6th Cir. 2000).  "[T]he weight to be given to each factor can vary depending upon the particular case."  ***Johnson v. Kroger Co***., 319 F.3d 858, 867 (6th Cir. 2003).  As stated by the Sixth Circuit in ***Barnes v. City of Cincinnati***, 401 F.3d 729, 737 (6th Cir. 2005),

> [The plaintiff] need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated.'  Rather, [the plaintiff] and the employee with whom he seeks to compare himself must be similar in 'all of the relevant aspects.' ***Ercegovich***, 154 F.3d at 353 (noting that inflexible criteria for establishing the similarly-situated requirement would mean that 'a plaintiff whose job responsibilities are unique to his or her position will never successfully establish a prima facie case (absent direct evidence of discrimination.')

The Sixth Circuit has noted that "***Mitchell*** itself only relied on those factors relevant to the factual context in which the ***Mitchell*** case arose-an allegedly discriminatory disciplinary action resulting in the termination of the plaintiff's employment."  ***McMillan v. Castro***, 405 F.3d 405, 413 (6th Cir. 2005) (citing ***Ercegovich***, 154 F.3d at 352).  The ***McMillan*** court clarified that the specific factors addressed in ***Mitchell*** "generally are all relevant in cases alleging differential disciplinary action," but courts should not assume that the specific factors discussed in ***Mitchell***

9

are relevant in cases arising under different circumstances. *Id*.

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case.  If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).  If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer*, 29 F.3d at 1084.  The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. *Id.*  The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.*  If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.*  For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

**1.  Prima Facie Case**

Plaintiff does not dispute that she was not replaced.  Instead, in an effort to establish the fourth prong of her prima facie case, she alleges that she was treated less favorably than similarly-situated individuals who engaged in comparable conduct.  Defendant contends that plaintiff's argument that she and other employees with whom she seeks to compare herself were similarly-situated is precluded by the doctrine of issue preclusion.  The Court will address this argument as a threshold matter.

"[Issue preclusion] precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." ***Jacobs v. Smurfit-Stone Container Corp***.,  2007 WL 3244487, *2 (S.D. Ohio 2007) (quoting ***Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc***., 918 F.2d 658, 661 (6th Cir. 1990)). There are four prerequisites to issue preclusion: 1) the issue precluded must be the same one involved in the prior proceeding; 2) the issue must actually have been litigated in the prior proceeding; 3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and 4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue. ***Id***. (citing ***Cent. Transp., Inc. v. Four Phase Sys., Inc***., 936 F.2d 256, 259 (6th Cir. 1991)).

Defendant claims that plaintiff argued before the referee, the common pleas court, and the appellate court that her termination was improper because she was treated more harshly than other employees who were charged with DUI.  Defendant contends that in the administrative proceeding, plaintiff argued that she was treated differently from other employees who had been charged with DUI for political reasons connected to the upcoming Board elections, and the

referee noted that two prior teachers in the district had been charged with OVI offenses, both of them had reported these offenses to their immediate supervisors, and one teacher had the charge dismissed and the other pled to a lesser charge.

Defendant further notes that on appeal to the common pleas court, plaintiff argued that the Board had not investigated the DUI arrests of Siebenburgen or Hrnyak, even though Hrnyak had attended a student game the same night he was arrested, and had never initiated disciplinary action in those cases, thereby tacitly acknowledging that plaintiff's DUI arrest was insufficient standing alone to justify terminating her. Defendant contends that plaintiff's attempts to compare herself to Siebenburgen and Hrynak were rejected at all levels. Defendant notes that plaintiff made a similar argument on appeal to the appellate court. Defendant contends that the appellate court specifically found the following Board determinations that the other employees were not similarly-situated to be consistent with the evidence:

> {¶29} . . . The Board also distinguished appellant's criminal offense from those of two other district employees who had been charged with OVI. The Board explained that in both of the previous cases, the charges involved lower level offenses without the aggravating circumstances such as the failure to stop or the highly elevated blood alcohol content . . . .
> {¶31}. . . The Board again distinguished appellant's criminal offense from those of the other two district employees, noting that in both cases the employees had immediately informed their supervisors of their arrests.

*See* Motion for Summary Judgment, Appx.1, ¶¶ 29, 31.

Upon review of the record in this case, the Court finds that plaintiff is not barred by the doctrine of issue preclusion from arguing that she was similarly-situated to the individuals with whom she seeks to compare herself. There was no finding made by the referee or the state courts that plaintiff was treated differently than individuals who were similarly-situated to her. The appellate court noted the Board's findings quoted above, but the appellate court itself made no

findings as to whether plaintiff was similarly-situated to other employees who had been arrested for DUI. Thus, the findings of the Board as restated by the appellate court are not entitled to preclusive effect in this litigation.

Defendant also refers to the following statements that the referee made at page 7 of the report and recommendation in support of its issue preclusion argument:

> Two prior teachers in the District had been charged with OVI offenses. Both had reported these offenses to their immediate supervisors. One of them resulted in a dismissal of the charge and the other plead [sic] to a lesser charge. Neither employee was disciplined by the District. The only teacher that had been terminated in Farrell's term was a teacher that had stolen from the District.

*See* Motion for Summary Judgment, Appx. 3. These are factual matters that the referee was reciting and are not issues that were decided by the referee. Because the referee made no findings as to whether plaintiff was treated differently than similarly-situated individuals, the referee's statements do not preclude plaintiff from pursuing her argument that she was treated less favorably than individuals who were similarly-situated to her. The Court will therefore address the merits of plaintiff's claims.

Plaintiff seeks to compare herself to several School District employees who were charged with DUI but who were not terminated from their employment. The first of these employees, Brian Jones, was a custodian who did not hold a position comparable to that held by plaintiff. Similarly, Siebenburgen and Corwin were not similarly-situated to plaintiff as they were teachers at the middle school whereas plaintiff was an administrator and a supervisor. Although plaintiff alleges that Siebenburgen and Corwin's status as classroom teachers was much more likely to confer upon them the mantle of role model than was plaintiff's position as Assistant Superintendent due to the fact that plaintiff had much less daily interaction with Fairfield

13

students, the fact that the teachers did not supervise other employees and were not high-level administrators means that all relevant aspects of their employment situation were not similar to plaintiff's situation for purposes of establishing the fourth prong of her prima facie case.

This leaves Nick Hrnyak, who was the Athletic Director from 1999 to 2003. Plaintiff alleges that the Athletic Director position is a highly visible position in the School District and is a supervisory position since the Athletic Director supervises all of the district's coaches and also "supervises" all of the student athletes.[2] Plaintiff likens Hrnyak's infraction to hers, noting that Hrnyak was charged with DUI after attending a Fairfield game. Plaintiff claims that she and Hrnyak were nonetheless treated dissimilarly for the same or similar infraction because Farrell made the Board aware of Hrnyak's DUI but never conducted an investigation into the events leading to the DUI. Plaintiff further alleges that neither Farrell nor Hrnyak's supervisor, Monica Mitter, brought a recommendation of termination to the Board.

Defendant seeks to distinguish plaintiff and Hrnyak on the following bases:

• Plaintiff was Assistant Superintendent of the School District, she reported solely to Farrell, she served as the chief administrative officer of the School District in his absence, she was to keep Farrell completely and continuously informed regarding pertinent matters (which would include the offense with which she was charged), and she remained in touch with Farrell on a constant basis, including evenings and weekends; **whereas** Hrnyak was Athletic Director, he reported directly to the principal of the building in which he was located, and there is no evidence he maintained the same relationship with Farrell as did plaintiff.

_____

[2] The Athletic Director does not, or course, supervise students in an employer/employee capacity.

14

- Plaintiff was a role model in the School District with respect to drug and alcohol education and the appellate court specifically found that the Board "presented evidence of the public nature of appellant's conduct and the negative impact her misconduct would have on her ability to perform her professional duties, including those duties specifically relating to drug and alcohol education;" **whereas** no such evidence exists with respect to Hrnyak.

- Plaintiff was charged with a host of offenses, including an upper-level DUI charge based upon her high blood alcohol content; **whereas** Hrnyak was charged with a lower-level DUI charge, which he challenged, resulting in its dismissal.

- Plaintiff attempted to minimize her responsibility, and her blood alcohol content directly conflicted with her statement that she only had two glasses of wine, a claim she later admitted was not truthful; **whereas** Hrnyak was charged on a Saturday night, he reported the charge to both his principal and Farrell the next morning before they were notified in some other manner, he was forthcoming with the details, and he admitted that he had made a mistake.

- Plaintiff's charge received a flood of media attention throughout the school district; **whereas** Hrnyak's charge never even reached the newspaper.

- Plaintiff was under the influence of alcohol at a Board event on Board property; **whereas** there were no allegations that Hrnyak had been under the influence of alcohol at either a Board event or on Board property.

Plaintiff seeks to minimize these differences, arguing that she and Hrnyak were similarly-situated in that both held positions of a public nature and were role models, Hrnyak more so than

15

plaintiff because of his daily interaction with Fairfield students; the Board could not have relied on the fact that plaintiff allegedly faced a "host of charges," including a more serious DUI charge, since all but one of the charges against her were dismissed and sealed and the DUI charge was reduced; the Board was never provided with videotapes of the arrest of Hrnyak and did not investigate the circumstances of his arrest; Farrell admitted that plaintiff disputed the charges against her just as Hrnyak had; Hrnyak's notification to Mitter and Farrell via phone call the morning after the charge is immaterial since defendant has no policy requiring an employee to report a DUI charge, plaintiff's attorney had advised her not to discuss the charges with anyone, and plaintiff freely revealed the charges when asked about them by Farrell 48 hours later; and defendant cannot rely on the public reaction to the charges against plaintiff or her alleged untruthfulness, which allegedly motivated its decision to investigate her behavior in the hours preceding her DUI charge, since neither the resolution passed by the Board to consider her termination nor to terminate her states that the public reaction to the charges against her or her alleged untruthfulness factored into the decisions. Plaintiff also argues that defendant cannot rely on the same actor inference to discount plaintiff's evidence of more favorable treatment of similarly-situated employees outside the protected class since the inference allows, but does not require, a jury to infer that no discrimination occurred from the fact that the same person both hired and fired the employee. ***See Wexler v. White's Furniture, Inc.,*** 317 F.3d 564, 572-73 (6th Cir. 2003).

In reply, defendant argues that the evidence pertaining to plaintiff's conduct resulting in the OVI charge was not sealed, specifically that plaintiff operated her vehicle under the extreme influence of alcohol (0.236 blood alcohol content) and in an unsafe manner by weaving in and

out of marked lanes and by nearly striking a parked car along I-275.  In addition, defendant contends that only in plaintiff's case were the facts that she reported "discrepant," which led to an investigation into the facts.

The Court finds that plaintiff has not come forward with sufficient evidence to raise a genuine issue of material fact as to whether she was similarly-situated to Hrnyak in all relevant respects.  First, plaintiff was entrusted with a great deal more supervisory responsibility than was Hrnyak.  She reported directly to the highest level administrator in the district and was second-in-command.  Hrnyak was a much lower-level administrator who reported directly to the principal of the building in which he was located.  Second, plaintiff's job responsibilities included duties pertaining to drug and alcohol education, whereas Hrnyak's job did not entail similar duties.  Third, the Board could reasonably conclude based on the facts before it that plaintiff was subject to termination under the express terms of the Fairfield City School policy for being under the influence of alcohol on Board property, whereas there is no evidence in the record to suggest that Hrnyak was likewise under the influence of alcohol on Board property.  Fourth, plaintiff had a very high blood alcohol content and engaged in embarrassing and uncooperative behavior at the traffic stop, which received widespread media attention, whereas there is no evidence that the same is true of Hrnyak.  Finally, plaintiff violated her obligation to keep Farrell informed of all pertinent matters by failing to advise him of the stop and the charges against her and she was not initially truthful, whereas Hrnyak was forthcoming and notified school officials promptly of the charge against him.  Based on these differences in plaintiff and Hrnyak's positions, the seriousness of their infractions, and the circumstances surrounding the infractions and their responses, a reasonable jury could not find that plaintiff and Hrnyak were

17

similarly-situated for purposes of establishing the fourth prong of plaintiff's prima facie case of gender and age discrimination.[3]

## 2. Defendant's Articulated Non-Discriminatory Reasons for Plaintiff's Termination/Pretext

Defendant is entitled to summary judgment for the additional reason that plaintiff has failed to offer sufficient evidence of pretext. Defendant proffers the following reasons for plaintiff's termination: (1) she was under the influence of alcohol in violation of Board policy while attending a football game on a Friday night; (2) her conduct in driving while under the influence and failing to stop for a police officer following the football game was a public action and hostile to the community; and (3) plaintiff failed to disclose the matter to Farrell in violation of her job description.

The Court finds that plaintiff has not come forward with sufficient evidence to establish pretext. There is no evidence to suggest that the reasons offered by defendant for plaintiff's termination are factually false. Nor, for the reasons stated above, has plaintiff come forward with evidence that other employees who were similarly situated to her engaged in conduct substantially identical to that which purportedly motivated her discharge. Absent any such evidence, there is no basis for second-guessing the Board's business judgment to terminate plaintiff's employment based on her violation of Board policy, her job responsibilities, and its expectations of her premised on the nature of her position. *See Wexler,* 317 F.3d at 576.

---

[3] Plaintiff cannot establish the fourth prong of her prima facie case of age discrimination for the additional reason that she has not provided an age or year of birth for Hrnyak, the only possible comparable for this claim, who defendant asserts is over 40 and is older than plaintiff.

**VI.  Conclusion**

In accordance with the foregoing, defendant's motion for summary judgment is hereby

**GRANTED**.  Plaintiff's claims against defendant are **DISMISSED** with prejudice.  This case is

**TERMINATED** on the docket of the Court at plaintiff's cost.

**IT IS SO ORDERED**.


S/ Herman J. Weber _____
HERMAN J. WEBER, SENIOR JUDGE
UNITED STATES DISTRICT COURT